**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 10 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FREDERICK A. JONES,
KATHERINE PRESTON, AND
LILLIAN B. TURNER,

        Plaintiffs - Appellants,

    v.

DENVER POST CORPORATION, a
Colorado corporation,

        Defendant - Appellee.

No. 98-1458

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 96-S-2359)**

---

Scot Melvin Peterson (Michael H. Berger with him on the briefs), Waldbaum, Corn, Koff, Berger & Cohen, P.C., Denver, Colorado, appearing for Plaintiffs-Appellants.

Mary H. Stuart, Holme, Roberts & Owen, LLP, Denver, Colorado, appearing for Defendants-Appellees.

---

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

The district court granted summary judgment to defendants on plaintiffs' claims of racial discrimination in employment. Plaintiffs filed a timely appeal and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

I.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "'We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury.'" Aramburu v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997) (quoting Williams v. Rice, 983 F.2d 177, 179 (10th Cir. 1993)). In an employment discrimination case, the trial court finding of intentional discrimination against a protected class is a finding of fact. EEOC v. Flasher Co., 986 F.2d 1312, 1317 (10th Cir. 1992). We review this finding for clear error. Id.

-2-

II.

The three plaintiffs allege that defendants' employment practices violated 42 U.S.C. § 2000e-2(a)(1) ("Title VII"). [1] We review each plaintiff's claims individually.

**A. Frederick Jones**

1. <u>Background</u>

Frederick Jones, an African-American, began working at the Denver Post ("Post") in 1989. Between 1989 and 1996, Jones worked primarily as a voluntary sales representative, processing phone requests for classified advertisements.

Beginning in 1992, Jones received letters from Post management regarding his absenteeism. On August 11, 1992, Rhonda Canino, one of Jones's supervisors, issued him a written reprimand for insubordination concerning an extended lunch hour. On August 27, Canino advised Jones in writing that he had abused the company's sick leave policy by taking an unauthorized medical absence.

On January 3, 1995, Rosemary Reitz, another of Jones's supervisors, issued him a written warning for long-distance telephone calls made on company time and at company expense. On September 20, 1995, Jones received an

---

[1] Denesia Bey was also a plaintiff in the district court. Ms. Bey did not appeal from the final judgment of that court and therefore is not a party to this appeal.

additional written warning from Nancy Allen, another Post supervisor. Allen reprimanded Jones for using Post phones to conduct outside business. Allen cautioned Jones that future violations would result in his immediate termination.

From late 1995 to early 1996, Jones worked at the Post's fax desk, taking fax orders from advertisers. During this period, Reitz approached Jones about complaints regarding his work. Reitz advised Jones that if the situation at the desk did not improve, changes would be made. After a few months at the fax desk, Jones was sent back to the voluntary classified sales department.

On April 22, 1996, Jones filed a discrimination charge with the Colorado Civil Rights Division (CCRD) and the Equal Employment Opportunity Commission (EEOC). On August 1, 1996, the EEOC issued Jones a Notice of Right to Sue. Jones's discrimination charge alleged that the Post disciplined him differently than other employees and that the Post demoted him from the fax desk without warning. Based on the scope of the charge, the district court limited its jurisdiction to Jones's claims of disparate treatment and discriminatory demotion based on race. [2]

2. <u>Analysis</u>

_____

[2] In his First Amended Complaint, Jones raised additional claims that the district court found unrelated to his discrimination charge. The court dismissed these claims for failure to exhaust, and Jones does not appeal the dismissal of these additional claims.

In Title VII cases, the inquiry is whether defendant intentionally discriminated against plaintiff based on protected class characteristics. Flasher, 986 F.2d at 1317. A plaintiff may prove intentional discrimination "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996) (quoting United States Postal Service v. Aikens, 460 U.S. 711, 716 (1983)) (second citation omitted). A personnel policy which is discriminatory on its face provides direct evidence of intentional discrimination. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121-22 (1985). Since Jones offers no evidence of "an existing policy which itself constitutes discrimination," Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990), his claim rests on indirect evidence of discrimination.

In Title VII cases based on indirect evidence, plaintiff has the initial burden of establishing a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiff does so, then defendant must "articulate some legitimate, nondiscriminatory reason" for the challenged personnel action. Id. Plaintiff then bears the ultimate burden of demonstrating that defendant's stated reason is in fact a pretext for unlawful discrimination. Id. at 804.

The district court found that Jones failed to establish a prima facie case of

disparate treatment regarding his discipline by the Post. We agree. A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that (1) the plaintiff is a racial minority, (2) the plaintiff was disciplined by the employer, and (3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination. Cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (articulating prima facie case for discriminatory treatment in context of failure to promote claim); id., at 254 n.6 (The prima facie "standard is not inflexible, as '[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations.") (quoting McDonnell Douglas, 411 U.S. at 802 n.13). One of the ways this third prong may be met, and the method chosen by Jones here, is by attempting to show that the employer treated similarly situated employees differently.

In the instant case, Jones contends that Rhonda Canino took orders for pastries from her husband's business during business hours, but the Post did not discipline her for this alleged conduct. Since the Post reprimanded Jones for using Post phones to conduct his outside business, Jones claims disparate treatment. However, the comparison Jones makes between himself and Canino is not legally relevant. Canino was one of Jones's supervisors and therefore cannot

be deemed similarly situated in a disciplinary matter such as this one. Jones points to no other individual who was disciplined differently. Thus, the district court correctly granted defendants' motion for summary judgment on this count.

Jones also contends that his transfer from the fax desk back to voluntary sales constituted a discriminatory demotion. To establish a prima facie case of discriminatory demotion, plaintiff must show (1) that he was within a protected group, (2) adversely affected by defendant's employment decision, (3) qualified for the position at issue, Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir. 1993), overruled on other grounds by Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir. 1995), and (4) that the job from which he was demoted was not eliminated, Perry v. Woodward, Nos. 97-2343, 98-2003, 1999 WL 1256340, at *13 (10th Cir. Dec. 20, 1999).

The district court did not evaluate Jones's prima facie case under the standard outlined above. Instead, the judge focused on Jones's lack of evidence concerning similarly situated non-African-American employees. We therefore assume without deciding that Jones established a prima facie case, and the burden shifted to the Post to articulate a legitimate, nondiscriminatory reason for returning him to voluntary sales. At this stage, defendant need only "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." Flasher, 986 F.2d at 1317. Jones had a long history of problems at the Post: he

received both verbal and written warnings and was disciplined for various workplace violations. In addition, there were specific complaints about his performance at the fax desk. Thus, on this record, the Post has met its burden.

Jones bears the ultimate burden of demonstrating that defendant's proffered reasons for his demotion were pretextual. The district court concluded that the evidence as a whole was insufficient to create a genuine issue of material fact regarding pretext. We agree. Jones's replacement at the fax desk apparently was passed over for another position at the Post. Based on this singular objective fact, Jones offers his personal belief that the replacement was less qualified than he was for the fax position. "It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996). Based on documented workplace violations and specific complaints, a Post manager returned Jones to voluntary sales. We find no evidence of pretextual behavior and thus affirm the district court's grant of summary judgment on Jones's discriminatory demotion claim.

**B. Katherine Preston**

1. Background

Katherine Preston, an African-American, began working full-time at the Post in December 1995 as a voluntary sales representative. In February and May

of 1996, Preston applied for a promotion to the real estate contract desk. On both occasions, the Post selected another employee for the position. On May 29, 1996, Preston filed a discrimination charge with the CCRD and the EEOC. On August 1, 1996, the EEOC issued Preston a Notice of Right to Sue. In the discrimination charge, she alleged that she was denied a promotion based on her race. The charge specifically limited the date of discrimination to May 22, 1996.

    2. Analysis

In dismissing Preston's single claim for failure to promote, the district court assumed she had established her prima facie case. The court then found that defendant set forth a legitimate, nondiscriminatory reason for its personnel decision, and Preston could not make a sufficient showing of pretext. We affirm the district court's dismissal of Preston's claim.

The Post hired Tara Wagner, a white female, to the position Preston sought in May 1996. Nolan Epple, a Post manager, cited the following factors in support of his decision to hire Wagner: (1) Wagner's experience for one year within the department, (2) recommendations from both her supervisors, (3) her rapport with clients, and (4) her ability to work in the team environment at the Post. We agree with the district court that Epple's testimony concerning Wagner's superior qualifications constitutes a legitimate, nondiscriminatory reason for the Post's decision not to promote Preston.

We also agree that Preston has not carried her ultimate burden in demonstrating genuine issues of material fact concerning pretext. Preston counters Epple's objective criteria with her subjective belief that Wagner contributed to the demotion of a fellow employee, thereby casting doubt on her abilities as a team player. [3] "[P]laintiff's 'mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1491 (10th Cir. 1995) (quoting Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)). We therefore affirm the district court's dismissal of Preston's May 1996 failure to promote claim.

In the First Amended Complaint, Preston alleged numerous additional discriminatory practices at the Post. Based on the scope of the discrimination charge, the district court limited its jurisdiction to the single claim of failure to promote in May 1996 and dismissed Preston's other claims for failure to exhaust. On appeal, Preston contends that the district court erred in dismissing two of these claims.

First, Preston claims that the district court should have considered her claim of failure to promote in February 1996. We disagree. A plaintiff must

_____

[3] In her brief, Preston also relies on affidavit testimony from two co-workers. However, this testimony only relates to a claim Preston failed to exhaust below.

-10-

exhaust her administrative remedies before bringing suit under Title VII. Aramburu , 112 F.3d at 1409.  "The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge."        Id. Preston expressly limited the allegation in the charge to May 22, 1996.  She now attempts to plead   past acts not documented in that charge.  Exhaustion gives the charged party notice of the alleged violation.        Ingels v. Thiokol Corp.   , 42 F.3d 616, 625 (10th Cir. 1994).  Here, Preston gave notice of a singular failure to promote and apparently declined to allege a pattern of discrimination.   The district court therefore properly dismissed this claim for failure to exhaust.

Second, Preston argues that the district court should have considered her claim that the Post retaliated against her for filing an administrative charge. Preston contends that, after the charge was filed, the Post limited her opportunities to substitute on other desks for extra pay.   It is true that "'an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint.'"   Id. (quoting  Brown v. Hartshorne Pub. Sch. Dist. No. 1     , 864 F.2d 680, 682 (10th Cir. 1988)).  Thus, the district court should have considered the retaliation claim on the merits.

The Post asserts that Preston did not raise her retaliation claim before the

-11-

district court and therefore cannot maintain it on appeal. We disagree. Both the First Amended Complaint and Preston's brief opposing summary judgment raised this claim, and the district court ruled on it. We therefore hold that Preston's retaliation claim is not barred for failure to exhaust, and that Preston adequately raised it below. We thus remand the claim for consideration by the district court on the merits.

### C. Lillian Turner

1. Background

Lillian Turner, an African-American, joined the Post in 1984 as a contract sales representative in the automotive department. During the course of her employment with the Post, Turner has received numerous verbal and written warnings concerning absenteeism and performance problems. On February 29, 1988, M. Jean O'Toole, a manager in the classified department, expressed concern in writing about Turner's attendance record. In the spring of 1995, Rhonda Canino counseled Turner about an error in a particular advertisement. On June 9, 1995, Canino issued Turner a written warning based on additional errors in published advertisements. On June 20, 1995, Bob Haddad, another Post supervisor, suspended Turner for one day without pay as a result of continued customer complaints.

Finally, on August 16, 1995, after another customer complaint, the Post

moved Turner from contract to voluntary sales. Her base salary remained the same but was frozen for a period of time. According to plaintiff, she was eventually promoted back to contract sales. Defendant neither admits nor denies this fact.

On April 17, 1996, Turner filed a discrimination charge with the CCRD and the EEOC. On August 1, 1996, the EEOC issued Turner a Notice of Right to Sue. Given Turner's allegations in the charge, the district court limited its jurisdiction to Turner's claims of disparate treatment and discriminatory demotion in violation of Title VII. [4]

2. Analysis

The district court did not expressly evaluate Turner's prima facie case for discriminatory demotion under the controlling criteria set forth in Hooks and Perry. We therefore assume without deciding that Turner established a prima facie case and the burden shifted to the Post to articulate a legitimate, nondiscriminatory reason for returning Turner to voluntary sales. As set forth above, Turner had a history of discipline problems at the Post. The company imposed progressive discipline for continued violations, which culminated in the

---

[4]In her First Amended Complaint, Turner raised additional claims that the district court found unrelated to the administrative charge. The court dismissed these claims for failure to exhaust, and Turner does not appeal the dismissal of these additional claims.

demotion at issue. By documenting a pattern of performance problems, the Post has met its burden at this stage of the McDonnell Douglas analysis.

To survive summary judgment, Turner must demonstrate that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e. unworthy of belief." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). Turner has not done so on the record before us. Turner concedes that she was the lowest producer on the automotive desk and admits to making numerous errors with her advertisements. The gravamen of her allegation is that other employees on the contract desk made similar errors and were not disciplined accordingly. However, Turner has produced only generic and conclusory testimony to support this allegation. When opposing a motion for summary judgment, the non-movant may not rest upon "mere allegations" but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The affidavits Turner produced are wholly devoid of any specific instances of disparate treatment.

Beyond that, there is no evidence in the record that any supervisor was aware of the alleged mistakes committed by fellow employees. In fact, one supervisor, in his written reprimand, expressly informed Turner that other sales representatives with comparable responsibilities were not having the same problems. Turner even acknowledged that she does not know if advertisers were

making similar complaints about other employees. Thus, Turner has not demonstrated that there is a genuine issue of material fact concerning pretext, and we therefore affirm the district court's dismissal of this count.

Turner's claim of disparate treatment fails for the same reasons. One method plaintiff may employ to give rise to an inference of racial discrimination is to show that she was treated differently than other similarly situated employees. The record contains the affidavits of similarly situated employees who state that, in their opinion, the Post subjected Turner to disparate treatment. However, these employees reference no particular incidents to support the charge. Without specific examples of unlawful discrimination, Turner cannot withstand a motion for summary judgment.    See id. at 1408 n.7 (stating that fellow employees' subjective belief that employer discriminated against plaintiff is not sufficient to preclude summary judgment). In addition, we have found no objective evidence of disparate treatment in the record. For example, there is no independent evidence that a white employee made the same mistakes as Turner and that this white employee's supervisor knew about the mistakes but did not discipline the employee. Thus, we also affirm the district court's dismissal of Turner's disparate treatment claim.

**D. Attorney Fees to Canino**

Finally, plaintiffs contend that the district court erred in awarding attorney fees to defendant Canino. We review the factual findings underlying an attorney fee award for abuse of discretion. Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995). However, we review de novo the legal conclusions supporting the award. Bryan v. Office of Personnel Mgmt., 165 F.3d 1315, 1320 (10th Cir. 1999).

In the First Amended Complaint, Turner asserted a single claim against Canino for "Aggravation of Preexisting Medical Conditions." The district court found that this self-styled allegation did not state a claim for relief under Colorado law. The court thus dismissed the claim pursuant to Fed. R. Civ. P. 12(b)(6).

"When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state . . . just as we would if our jurisdiction rested on diversity of citizenship." Lytle v. City of Haysville, 138 F.3d 857, 868 (10th Cir. 1998). In the Tenth Circuit, attorney fee statutes are considered substantive. See Boyd Rosene & Assocs. v. Kansas Mun. Gas Agency, 174 F.3d 1115, 1118 (10th Cir. 1999) (finding that attorney fees are substantive for diversity purposes). Therefore, the district court properly consulted Colo. Rev. Stat. Ann. § 13-17-

201 (West 1999), the applicable Colorado fee recovery statute.[5]

Section 13-17-201 provides that if a court dismisses a personal injury action pursuant to a 12(b) motion, then "defendant shall have judgment for his reasonable attorney fees."[6] Because the district court dismissed Turner's "personal injury" action on a Rule 12(b) motion, the court properly awarded her fees.  See Smith v. Town of Snowmass Village, 919 P.2d 868, 873 (Colo. Ct. App. 1996) (finding that where entire action against one defendant was dismissed but claims remained against another defendant, § 13-17-201 entitles prevailing defendant to attorney fees).

**AFFIRMED IN PART, REVERSED IN PART**, and **REMANDED** for further proceedings consistent with this opinion.

---

[5] At one point in its order, the district court cites both state and federal law concerning fee recovery.  However, the court clearly relied upon Colorado law in its final order awarding fees to Canino.  We therefore review the district court's application of Colorado law and do not address the court's reference to federal law.

[6] Section 13-17-201 expressly applies only to actions dismissed under Rule 12(b) of the Colorado Rules of Civil Procedure.  However, we find the statute applies with equal force when a federal court dismisses a pendent state tort pursuant to Fed. R. Civ. P. 12(b)(6).

-17-

No. 98-1458, JONES et al. v. DENVER POST CORPORATION

McKAY, Circuit Judge, concurring in part and dissenting in part:

I join in the court's opinion except as to Appellant Turner. I am persuaded that the trial court erred in treating the affidavit testimony of fellow employees Jeffry J. Mangin and Gloria K. Smith as conclusory and nonprobative. This testimony, viewed in a light most favorable to Ms. Turner, is sufficient to establish a prima facie claim for disparate treatment. Based on this evidence, a trier of fact could find that "the employer imposed the discipline [on Ms. Turner] under circumstances giving rise to an inference of racial discrimination." Maj. Op. at 6. As noted by the majority, a showing that she was treated differently than similarly situated employees is sufficient to demonstrate such circumstances. See id. The testimony is also sufficient to create a substantial fact issue concerning pretext in connection with the discriminatory demotion claim.

Far from being merely conclusory as the majority determines, the testimony of these fellow employees in the classified advertising department represents both specific facts and specific observations which are both relevant and persuasive.

Mr. Mangin's affidavit stated:

> All of us made mistakes and Lillian made no more mistakes than the rest of us. . . .
>
> . . . When I made errors I was not written up[;] however when Lillian made errors she was written up by Rhonda Canino. The volume was enormous, as I stated above, and everyone made

mistakes so why did they single out Lillian. Susan Passwalt and I even had discussions regarding the fact that Lillian was being singled out.

Appellants App., Vol. 2 at 404-05.[1] This is not mere conclusion and allegation. It is statement of fact by one who knows whether his mistakes were known to their joint supervisor and who was in a clear position to observe the difference in consequences. Who better to know the facts than the one receiving preferential treatment. At the summary judgment stage it is not necessary for a witness who is integral to the environment at issue to submit a comparative table of errors or even to cite specific cases. When he says he was "not written up," that adequately implies that his errors were known.

Ms. Smith's testimony included the fact that "Rhonda was out to get Lillian and some of the charges were minor and common for the people working in that department. It was clear to me and many others in classified that Lillian was being badgered." Id. at 426. This is not the "vague and conclusory" stuff the trial court held it to be. First of all, "badgering" does not lend itself to tables and charts. It is uniquely one of those things any person can recognize. This is a fellow employee, intimately and uniquely in a position both to observe and

_____

[1]Ms. Smith's affidavit indicates that the two employees who worked at the automotive contract desk in the same position as Ms. Turner, Mr. Mangin and Ms. Passwalt (or Patzwaldt), were not of minority descent.    See Appellant's App., Vol. 2 at 426.

-2-

compare. Moreover, the affidavits reveal that the badgering was so open and notorious as to be a matter of common discussion within the office. The detailed differences in the frequency of errors is a matter for cross-examination at trial–not for dismissal at summary judgment.

Because Ms. Turner has presented evidence demonstrating genuine issues of material fact, I would reverse and remand for trial in her case.