**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

FRANKLIN J. MEDINA,

      Plaintiff-Appellant,

v.

ROCKY MOUNTAIN HEALTH
CARE CORPORATION, a Colorado
corporation, doing business as
Blue Cross/Blue Shield of Colorado,
a Colorado corporation,

      Defendant-Appellee.

No. 99-1302
(D.C. No. 98-B-17)
(D. Colo.)

---

**ORDER AND JUDGMENT**   *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Franklin J. Medina appeals from the district court's order granting summary judgment for defendant-appellee Rocky Mountain Health Care Corporation, doing business as Blue Cross and Blue Shield of Colorado (Blue Cross), on Medina's discrimination and retaliation claims brought pursuant to Title VII and 42 U.S.C. § 1981. We affirm.

The facts of this case, viewed in the light most favorable to Medina, are as follows. Medina is Hispanic. At the time his employment was terminated, he was supervisor of purchasing and financial services at Blue Cross. He was supervised by Ron Schmitz, manager of administrative services.

Schmitz terminated Medina's employment following Medina's involvement in an auto-pedestrian accident on Saturday, August 14, 1993. As he was driving a company car to the Blue Cross facility on Broadway in Denver, Medina's car collided with a pedestrian who was attempting to run across Broadway. The pedestrian's arm shattered the passenger side window of the car and he was injured.

Medina drove away from the scene of the accident, looking for a telephone to call for help. By the time he placed a call and returned to the scene, an ambulance had taken the pedestrian to the hospital and the police had arrived. The police did not ticket Medina for hit and run; however, they issued him

a citation for driving a vehicle without a license because he did not have his license with him.

Medina drove the damaged car home from the scene and parked it in his garage until Monday morning. On his way to work on Monday, he dropped the car off for repair at Windshields of America, a company that Blue Cross regularly used for fleet repair jobs. He had a fellow employee pick up the car after it was repaired and return it to the Blue Cross garage. Medina charged the repair to the Blue Cross account.

Medina did not report the accident to Schmitz or Blue Cross's insurance carrier during the three and one half days following the accident. He alleges that he made some attempts to contact supervisory personnel, beginning on Monday, to tell them about the accident; however, these attempts were unsuccessful. The first notice Schmitz gained of the accident came through the police. A police officer visited Blue Cross immediately after the accident and informed an on-site employee that Medina had been involved in an accident while operating a company vehicle.

On Tuesday, August 17, 1993, after Schmitz learned of the police visit and noted that Medina had still not filed a report, Schmitz confronted Medina about the accident. Schmitz and Ms. Hernandez, an employee relations and diversity consultant, placed Medina on administrative leave and instructed him to draft

a statement of events. On August 24, 1993, Schmitz terminated Medina's employment for failing to report the accident to Schmitz or other supervisory personnel at Blue Cross, or to the insurance carrier, and for his lack of judgment in having the vehicle repaired before reporting the accident which involved personal injuries. [2]

On August 30, 1993, Medina initiated a formal appeal of his termination pursuant to Blue Cross's internal problem solving policy. On October 1, 1993, the Problem Solving Committee (Committee) conducted a hearing on Medina's appeal. The Committee determined that Medina had used poor judgment in failing to report the accident, but decided that he should be reinstated to his former position as supervisor of purchasing with a written warning.

Schmitz appealed the Committee's decision to a Corporate Review Board (Board). The Board determined that Medina would not be reinstated into his former supervisory position, but that Blue Cross should consider him for reinstatement to a non-supervisory position, if available, for which he was qualified. The Board concluded that Medina had used extremely poor judgment in failing to report the accident and should therefore not be allowed to supervise others.

---

[2]    The injured pedestrian asserted a claim against Blue Cross for his personal injuries. Blue Cross later reached a monetary settlement with the pedestrian.

Medina was informed of the Board's decision and invited to apply for non-supervisory positions at Blue Cross. He was referred to Katherine Sigler, a Human Resources generalist, who was assigned to help him in the process. During the next six months, Medina applied for a Customer Service position and a Human Resources position. He never found out why he did not get the Customer Service position. He was told, however, that he would not even be considered for the Human Resources position because he had shown poor judgment.

On July 5, 1994, Medina filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). He asserts that upon learning that the charge was filed, an associate from Blue Cross's legal department informed Medina that the associate would no longer assist him in his reinstatement efforts. After pursuing his administrative remedies, Medina filed this action, contending that he had been discriminated against because he is Hispanic.

We review the district court's grant of summary judgment de novo. See Marx v. Schnuck Markets, Inc., 76 F.3d 324, 327 (10th Cir. 1996).

> Summary judgment should be granted when there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In reviewing the district court's decision to grant summary judgment, we view the evidence in the light most favorable to the nonmoving party. The substantive law at issue determines which facts are material in a given case. Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quotations and citations omitted).

## I. **Showing of pretext in discriminatory termination claim**

In a Title VII case based on indirect evidence like this one, the plaintiff has the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If plaintiff does so, then defendant must "articulate some legitimate, nondiscriminatory reason" for the challenged personnel action. Id. The burden then shifts back to plaintiff to demonstrate that the defendant's stated reason is in fact a pretext for illegal discrimination. See id. at 804.

Blue Cross concedes that Medina has made out a prima facie case of discriminatory termination of employment. Medina in turn concedes that Blue Cross has articulated a nondiscriminatory reason for its personnel action: Medina's failure to report the accident. (Blue Cross also contends that it terminated Medina because he had the vehicle repaired before making a report.) The issue on appeal, therefore, is whether Medina presented evidence that the grounds advanced by Blue Cross for his termination were pretextual, i.e.,

unworthy of belief.    See Randle v. City of Aurora  , 69 F.3d 441, 451 (10th Cir.

1995).  Medina argues that he showed pretext on a number of grounds.

## A.  **Accident reporting policy**

As evidence of its policy requiring prompt reporting of accidents,

Blue Cross presented a set of instructions drafted by Hartford Insurance Company

that were placed in its company vehicles.  These instructions direct Blue Cross's

drivers to telephone their employer "as soon as possible in cases involving injury

or serious damage."  Appellant's App., Vol. I at 220.  If unable to contact Blue

Cross, employees are directed to call Hartford's emergency number.        See id.

Medina argues that Blue Cross's reliance on these instructions is pretextual,

because they were merely guidelines provided by the insurance company and did

not constitute official Blue Cross policy.  Regardless of the status of the Hartford

instructions, Medina testified that Blue Cross has a policy requiring timely

reporting of accidents involving company vehicles, preferably within twenty-four

hours.  See id. at 149, 177, 181-84.  He did not report his accident, which

involved personal injuries, and was confronted by his supervisor about it on the

third day after the accident.  He fails to create a genuine issue of material fact

concerning whether Blue Cross's application of its policy requiring prompt

reporting of accidents was pretextual under the circumstances.

Medina also contends that his failure to report should have been excused because he engaged in "indirect reporting." He cites his attempts to locate Ron Schmitz on Monday, August 16; his charging of the repair to the corporate account at Windshields America, a dealer regularly used by Blue Cross; the fact that he supplied registration and insurance information showing that the car was registered to Blue Cross to police at the accident scene; and his responsibilities for the company's vehicle fleet, which he says put Blue Cross on constructive notice of the accident.

At best, Medina's arguments show that he believes that he complied with the accident reporting policy, not that Blue Cross believed that he did. "Plaintiff's mere conjecture that [his] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Jones v. Denver Post Corp., 203 F.3d 748, 754 (10th Cir. 2000) (quotations omitted); see also Burch v. Henderson, No. 97-1095-CV-W-6, 2000 WL 97184, at *6 (W.D. Mo. Jan. 27, 2000) (holding that employee's belief that she satisfied requirements for reporting accident did not create triable question as to pretext).

B. **Personality conflict evidence**

Medina complains that the district court incorrectly considered evidence of personality conflict between himself and Ron Schmitz in determining that he had

failed to show pretext. Medina argues that the district court considered this irrelevant evidence sua sponte and applied an improper standard in evaluating it. He makes no argument that the evidence has any actual bearing on the pretext question, however. In our review of the pretext question, which is de novo, we have not relied on evidence of personality conflict between Medina and Schmitz. Therefore, Medina's argument does not require us to reverse the district court's decision.

C. **Realignment of responsibilities**

Medina argues that Blue Cross's stated reason for firing him is undermined by Schmitz's attempts to get him fired for poor work performance. He complains that Schmitz "set him up for failure" by giving him added responsibilities, then presented irrelevant arguments to the Committee concerning his deteriorating job performance. He concludes that Schmitz used the accident as a convenient way to get rid of him.

Medina presents no evidence, other than his own impression, that Schmitz gave him added responsibilities to "set him up." This is insufficient evidence to show pretext. See Jones, 203 F.3d at 754.

Moreover, Medina's evidence does not show that the stated reason was a pretext for discrimination . Medina argues that all he has to show at the summary judgment stage is that Blue Cross's stated reason was unworthy of

belief.  While this is true in a general sense, a plaintiff cannot show that a stated reason is pretextual merely by presenting evidence that the employer actually relied on a concealed but non-discriminatory reason:

> [I]n the unlikely event that the plaintiff concedes that the real, albeit concealed, reason for the employment decision was a motive that itself is not prohibited under the civil rights laws, the plaintiff would remain vulnerable to summary judgment . . . .  For example, if a defendant stated that the plaintiff was fired for unexcused absences and the plaintiff offered evidence that reason was pretextual and contended instead that he or she was really fired because the boss wanted to make that job available to his or her spouse, the defendant would be entitled to summary judgment because of plaintiff's concession that the true reason was not a prohibited discriminatory reason, even if it was concealed.

Randle, 69 F.3d at 451 n.14;  cf. also Reeves v. Sanderson Plumbing Prods., Inc., No. 99-536, 2000 WL 743663, at *9 (U.S. June 12, 2000) (stating, in Rule 50 context, that if record conclusively reveals some other, nondiscriminatory reason for the employer's decision, employer is entitled to judgment as a matter of law).

Thus, even if Schmitz actually fired Medina for poor job performance, or tried to get the Committee to fire Medina for poor job performance rather than because of the accident, this does not show pretext.  The concealed motive in such a case would not be discriminatory.

D. **Hiring evidence**

Medina complains that the district court improperly relied on statistical evidence concerning Schmitz's hiring of Hispanics.  He argues that this evidence

-10-

is irrelevant, because he is not making any allegations about Schmitz's hiring practices, and is not claiming a pattern or practice of discrimination. Medina makes no other argument about this evidence. Again, our review is de novo and so the district court's reliance on this evidence, even if incorrect, does not require reversal so long as, in our judgment, Medina has failed to show pretext.

E. **Reassignment evidence**

Medina complains that after he was fired, Schmitz reorganized the department to fit his successor's qualifications. He contends that this shows Schmitz had a "possible motivation" to reorganize the department even before his termination. Appellant's Opening Br. at 40. Medina's argument involves speculation rather than evidence and does not show pretext. See, e.g., Beaird, 145 F.3d at 1170.

Medina also complains that his job was upgraded after his successor took over. This also does not show pretext, particularly since there is evidence that the job was in a state of reorganization even before Medina was terminated. The record reveals that Medina discussed the need to update his job description with Schmitz at an employee evaluation. Schmitz believed that he had placed the job description on Medina's desk for a rewrite before Medina was terminated. The fact that the position was upgraded only after Medina left does not, in itself, show pretext.

F. **Failure to rehire**

The district court found that Blue Cross did not rehire Medina into the human resources consultant position because he lacked the minimum qualifications for the job. Medina contends that he did meet the qualifications, and that the whole qualifications issue is pretextual, because Blue Cross originally gave him a different reason for not considering him for the position: a track record of poor judgment.

Medina argues that he met the minimum qualifications for the job, through equivalent experience and substituted supervisory experience. Blue Cross responds that he did not meet the job qualifications. Neither the position advertisement, see Appellant's App., Vol. II at 281, nor the summary judgment testimony is dispositive on the question of whether Medina could have met the qualifications through equivalence.

Even if a factual dispute exists over whether Medina met the minimum qualifications for the job, however, we need not reverse summary judgment for Blue Cross. This is because Medina only attacks the job qualification rationale as evidence of pretext covering another, asserted non-discriminatory motive: refusal to consider him at all for the Human Resources position due to his alleged lack of good judgment and credibility. See Appellant's Opening Br. at 43, 44-45; Randle, 69 F.3d at 451 n.14.

The real issue here, therefore, is whether Blue Cross's refusal to consider Medina for the Human Resources job for alleged lack of good judgment and credibility was itself pretextual. Medina argues, first, that the only restriction placed on his rehiring by the Committee and the Board was that he not be placed in a supervisory position. Therefore, he argues, excluding him from a non-supervisory position for lack of good judgment and credibility is evidence of pretext.

It is well settled that employers may establish qualifications for a position and evaluate an employee's compliance with them. See, e.g., Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 & n.13 (10th Cir. 1999). Medina completely fails to show that the Human Resources position did not require especially good judgment and credibility, as Blue Cross asserted. He points to nothing in the Committee or Board decisions that suggests that these qualifications were to be waived in his case.

Medina argues that he was a model employee until the accident, and Blue Cross's determination that he had a bad "track record" for judgment is therefore itself pretextual. Careful reading of Manager Beth Dickinson's letter containing the "track record" language reveals that she never stated he had a record of making a number of bad decisions over a period of time. Rather, she used the "track record" language solely to refer to the findings of the Committee and the

-13-

Board that Medina had used extremely poor judgment in his conduct after the accident.   See Appellant's App., Vol. III at 662.  While Medina may disagree with his employer's decision that a single instance of extremely bad judgment should disqualify him from "a position which advises managers on employment and employee relations matters, wherein good judgement and credibility are absolute prerequisites,"   id., he fails to show that Blue Cross's refusal to consider him for the Human Resources position on this basis was pretextual.

G.  **Disparate treatment**

Medina argues that he was treated more severely than Anglo employees who committed work infractions of comparable seriousness.  He mentions a number of Anglo employees who he claims committed work infractions as serious as his own failure to report the accident, but who were not terminated for their infractions.  Upon review of the record and the applicable law, we agree with the district court that Medina has failed to demonstrate a genuine issue of material fact concerning whether the Anglo employees he mentions were similarly situated to him and therefore, that he fails to establish pretext through disparate treatment.   See Aramburu v. Boeing Co.   , 112 F.3d 1398, 1404 (10th Cir. 1997).

-14-

II. **Retaliation claim**

The district court concluded that Medina failed to make out a prima facie case of retaliation because he failed to identify the individual who allegedly retaliated against him. Medina asserts that he gave up all efforts to seek reinstatement after an alleged retaliator told him that he would receive no further help from Blue Cross because he filed a charge with the EEOC. Although he was uncertain of the identity of the alleged retaliator, Medina thought it might have been an attorney named Don Van Pelt. Blue Cross produced evidence, however, that Van Pelt does not possess a license to practice law, was never directed to assist Medina with reinstatement, never had a conversation with Medina concerning his reemployment efforts, and was unaware that Medina filed the EEOC charge.

Medina now argues that his failure to identify the person who retaliated against him is not fatal to his claim. Under the circumstances here, we disagree. Corporate defendants act only through authorized agents; therefore, it is incumbent on a plaintiff seeking to establish a prima facie case of retaliation to show that the corporate agent who took the adverse action was aware of the plaintiff's exercise of his rights and acted within the scope of his agency when taking the action against plaintiff. See Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997). It was Medina's duty to set forth

significant probative evidence regarding the identity, authority and knowledge of the Blue Cross agent who allegedly retaliated against him.      See id. at 1198. He failed to set forth such evidence, and therefore did not meet his burden of establishing a prima facie case of retaliation.

Medina has failed to establish a genuine issue of material fact concerning whether Blue Cross's asserted reason for terminating his employment was pretextual, and has failed to establish a prima facie case of retaliation.

The judgment of the United States District Court for the District of Colorado is therefore AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge