**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

GEORGE W. BROWN,

     Plaintiff-Appellant,

v.

LOWE'S HOME CENTERS,

     Defendant-Appellee.

No. 14-4133
(D.C. No. 2:13-CV-00072-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

Mr. George Brown is an African-American who worked for Lowe's Home Centers. One day, Mr. Brown and a Lowe's cashier yelled at each other, prompting Lowe's management to investigate the two employees' conduct. During the investigation, Mr. Brown reported that he had heard two fellow employees use the term "nigger," prompting Mr. Brown to complain to a supervisor. Lowe's placed both Mr. Brown and the cashier

---

[*]    Oral argument would not significantly aid in the decision. Thus, the Court will decide the appeal based on the briefs. _See_ Fed. R. App. P. 34(a)(2).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. R. 32.1(A). But the order and judgment can be cited for its persuasive value.

on probation (which Lowe's calls a "final notice"). Unhappy with this status, Mr. Brown complained of race discrimination to a Lowe's supervisor.

About two months later, Mr. Brown came to work impaired. Mr. Brown attributed the impairment to back pain; Lowe's attributed it to intoxication and fired him. Mr. Brown filed an administrative charge, alleging race discrimination and retaliation. The administrative charge was dismissed on multiple grounds, including timeliness.

The dismissal led Mr. Brown to sue under Title VII of the Civil Rights Act,[1] claiming disparate treatment, retaliation, and presence of a hostile work environment. The district court granted summary judgment to Lowe's. On appeal, we address three issues:

1. *Summary Judgment on the Claim of Disparate Treatment.* Mr. Brown claims disparate treatment when Lowe's put him on "final notice" and terminated him roughly two months later. The claim involving placement on final notice is unsupported in the record because Mr. Brown failed to present the district court with any instances of more favorable treatment of white employees. On the claim involving termination, Mr. Brown failed to timely exhaust administrative remedies. Thus, on the disparate-treatment claim, we conclude that the district court properly granted summary judgment to Lowe's.

---

[1] In his opening brief, Mr. Brown adds that he believes Lowe's violated the Utah Antidiscrimination Act of 1995. Appellant's Opening Br. at 7 (ECF pagination). But Mr. Brown did not allege violation of this law in the complaint or in his response to Lowe's summary judgment motion. *See* R., Vol. I at 21-44; *id.*, Vol. V at 6-63. Thus, he cannot prevail based on an appeal point involving the Utah Antidiscrimination Act of 1995. *See Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1092 (10th Cir. 2013).

2.  *Summary Judgment on the Retaliation Claim.* Mr. Brown also alleges retaliation, claiming he was put on final notice and terminated after complaining about a coworker's use of the term "nigger." This claim is unsupported with regard to placement on final notice, for the undisputed evidence shows that Lowe's had already been investigating Mr. Brown's conduct before his complaint of race discrimination. On the claim involving termination, Mr. Brown failed to timely exhaust administrative remedies. Thus, we conclude that the district court properly granted summary judgment to Lowe's on the retaliation claim.

3.  *Summary Judgment on the Claim of a Hostile Work Environment.* Mr. Brown also alleges a hostile work environment based on a racial slur, the firing of nonwhite employees, and antagonistic conduct by coworkers. These allegations are not enough to create a hostile work environment. Thus, we conclude that the district court properly granted summary judgment to Lowe's on this claim.

Based on these conclusions, we affirm.

## I.    Standard of Review

On each issue, we engage in de novo review, considering the evidence in the light most favorable to Mr. Brown. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). On summary judgment, the issue is whether Lowe's has shown (1) the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Id.*

## II.   Claims Involving Disparate Treatment and Retaliation

Mr. Brown complains of disparate treatment and retaliation when Lowe's put him on final notice and terminated his employment. On both theories, the district court properly granted summary judgment to Lowe's.

3

## A.    Placement on Final Notice

For the disparate-treatment and retaliation claims involving placement on final notice, Mr. Brown failed to present evidence creating triable issues of fact.

### 1.    Disparate Treatment

On the disparate-treatment claim, Mr. Brown alleges that he was treated more harshly than white employees. The alleged disparity would be actionable only if the white employees were similarly situated. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).

Mr. Brown was disciplined for verbal abuse after engaging in a yelling match with a cashier. Under Lowe's policy, verbal abuse constitutes a "Class A" violation, which ordinarily results in termination. R., Vol. II at 156. Rather than terminate Mr. Brown, Lowe's put him on "final notice," which would ordinarily lead to termination if the employee committed another policy violation within one year. *Id*.[2] Lowe's cited Mr. Brown for another policy violation about two months later and terminated him.

Mr. Brown complains that Lowe's treated white employees more leniently even though they allegedly

---

[2]    Mr. Brown argues that the warning was premature because it involved a "final notice" prior to any other disciplinary sanctions. But the "final notice" was imposed for a violation classified by Lowe's as "Class A." Under Lowe's written policy, "'Class A' violations normally result in immediate termination." *Id*.

4

- verbally abused a store manager,

- acted insubordinately toward Mr. Brown,

- verbally abused and intimidated Mr. Brown,

- accused Mr. Brown of misconduct,

- lied to a Lowe's supervisor, and

- conspired to undermine performance of a task assigned to another Lowe's employee.

According to Mr. Brown, all of these incidents involved white employees and resulted in "little or no" discipline. Appellant's Opening Br. at 13 (ECF pagination).

Responding to Lowe's summary judgment motion, Mr. Brown had an obligation to cite the parts of the record that he relied on. Fed. R. Civ. P. 56(c)(1)(A); DUCivR 56-1(c)(2)(C). But in his response to the summary judgment motion, he did not mention any of these incidents. R., Vol. V at 6-63.[3]

Instead, he relied solely on the episode when Lowe's placed him and a cashier on "final notice" for verbal abuse. On its face, the disciplinary

---

[3] In attaching documents to his summary judgment brief, Mr. Brown included an affidavit discussing many of these alleged incidents. *Id.* at 200-04. But in the brief itself, Mr. Brown did not refer to the affidavit for this purpose. Thus, the district court had no reason to comb through Mr. Brown's exhibits to find the references in his affidavit to leniency toward white employees.

5

sanctions for these two employees do not signal disparate treatment, for the sanctions were identical: placement on final notice.

Mr. Brown argues that the cashier should have been disciplined more harshly because she was already on final notice. On this issue, Lowe's presented the district court with evidence that the cashier was not on final notice when the infraction took place. To counter that evidence in district court, Mr. Brown relied solely on pages 89 and 160 of his deposition. *Id.* at 14 n.3. These page references do not create a genuine issue of fact about the cashier's disciplinary status.

The matter is mentioned in Mr. Brown's deposition on page 160, but not page 89. On page 160, Mr. Brown was asked how he knew the cashier was already on final notice; he answered that the cashier had said she was. *Id.* at 106; *see also* Appellant's Opening Br. at 19 (ECF pagination) (statement by Mr. Brown that the cashier had confessed to Mr. Brown that she already had a "final warning"). But the cashier's out-of-court statement to Mr. Brown would constitute inadmissible hearsay, which cannot be used to oppose summary judgment. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 (10th Cir. 2007) (stating that a coworker's statement cannot be used in summary judgment proceedings because it constitutes inadmissible hearsay). Without the cashier's alleged statement, Mr. Brown lacks any admissible source of personal knowledge regarding the cashier's disciplinary status. *See In re Grandote Country Club Co.*, 252 F.3d 1146,

6

1152 (10th Cir. 2001) (holding that the plaintiff cannot oppose summary judgment based on his own testimony when his personal knowledge was based on another person's inadmissible hearsay statement).

Without evidence of unequal treatment of other individuals under similar circumstances, we conclude that the district court properly granted summary judgment to Lowe's on the claim of disparate treatment for putting Mr. Brown on final notice.

## 2. Retaliation

Mr. Brown also claims that Lowe's put him on final notice to retaliate for his complaint about race discrimination.

To survive summary judgment on this claim, Mr. Brown had to present evidence of a causal connection between his complaint and Lowe's decision to put him on final notice. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Mr. Brown failed to present any such evidence.

Mr. Brown alleges that (1) he engaged in protected activity by complaining about a coworker's use of the term "nigger" and (2) Lowe's put Mr. Brown on final notice as a result. But when Mr. Brown voiced his complaint, he was already being investigated for his confrontation with the cashier. Because the investigation preceded the complaint, the Court cannot infer a retaliatory motive. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (holding that the plaintiff failed to create an

7

inference of pretext when the disciplinary actions "simply completed the disciplinary process already set in motion" before the plaintiff had engaged in protected speech). In the absence of evidence of a retaliatory motive, Lowe's was entitled to summary judgment on Mr. Brown's claim that Lowe's placed him on final notice to retaliate for his complaint of race discrimination.

**B.     Termination of Employment**

In claiming disparate treatment and retaliation, Mr. Brown also points to his termination. But he failed to timely exhaust these claims as they relate to his termination.

**1.     The Requirement of Timely Exhaustion**

Mr. Brown had to exhaust these claims by filing an administrative charge with the Utah Antidiscrimination and Labor Division. That filing was due 300 days after the underlying conduct. 42 U.S.C. § 2000e-5(e)(1) (2012); *see Davidson v. America Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003). Mr. Brown failed to meet this deadline, for he waited 360 days to file the administrative charge relating to his termination.

**2.     Mr. Brown's Failure to Timely Exhaust the Disparate-Treatment and Retaliation Claims Relating to His Termination**

Trying to avoid the time-bar, Mr. Brown argues that the claims trigger the Lilly Ledbetter Fair Pay Act of 2009 and the continuing violation doctrine. We reject these arguments.

8

### a.  The Lilly Ledbetter Fair Pay Act

The Lilly Ledbetter Fair Pay Act does not apply. This law addresses claims for employment compensation, not employment termination. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 630 (10th Cir. 2012).

Mr. Brown argues that the statute broadly covers practices beyond compensation decisions, pointing to the statutory language: "discriminatory compensation decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A) (2012). In Mr. Brown's view, the phrase "other practice" broadens the statute to encompass decisions not strictly confined to "compensation."

We rejected this view in *Almond v. Unified School District*, 665 F.3d 1174, 1180 (10th Cir. 2011). There we held that the phrase "other practice" applies only to "claims of unequal pay for equal work." *Almond*, 665 F.3d at 1180; *see also Daniels*, 701 F.3d at 630-31 (holding that a claim involving failure to promote does not constitute an "other practice" because it is not "compensation related"). Under *Almond*, Mr. Brown cannot avoid the time-bar by invoking the Lilly Ledbetter Fair Pay Act.

### b.  The Continuing Violation Doctrine

Mr. Brown's reliance on the continuing violation doctrine is also misguided, for this doctrine does not apply to claims involving disparate treatment or retaliation. *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003).

9

### c. Summary

After his firing, Mr. Brown waited 360 days to file an administrative claim. Because the filing was due in 300 days, we cannot consider the termination in connection with the claims of disparate treatment and retaliation.

### 3. The District Court's Characterization of Timeliness as a Jurisdictional Defect

The district court correctly regarded the administrative charge as untimely. In the district court's view, the delay prevented the district court from obtaining jurisdiction. But this characterization was incorrect, for the failure to timely exhaust is not jurisdictional. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *see also Harms v. I.R.S.*, 321 F.3d 1001, 1009 (10th Cir. 2003) (citing *Zipes* and noting that "the failure to timely exhaust administrative remedies is not a jurisdictional deficiency but rather is in the nature of a violation of a statute of limitations").

Because the 300-day deadline is not jurisdictional, it may be subject to equitable tolling when an employer or agency actively engages in deception. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). But Mr.

10

Brown does not claim deception. Instead, he urges equitable tolling on grounds that he had no attorney and was under a state administrative agency's control. These arguments are invalid for two reasons.

First, the absence of a party's attorney does not trigger equitable tolling. *See id.* at 958.

Second, the Utah Antidiscrimination and Labor Division did not have an obligation to decide the matter more quickly than it did. The agency may have waited longer than necessary to issue its decision, but that does not constitute deception.

As a result, Mr. Brown failed to justify equitable tolling and the administrative charge was not timely. His delay prevents us from considering the disparate-treatment and retaliation claims arising out of the termination.

## III.  Claims Involving a Hostile Work Environment

For the claim of a hostile work environment, Mr. Brown had to present evidence supporting a finding that his workplace was permeated with discriminatory intimidation, ridicule, and insults so severe or pervasive that they created an abusive working environment. *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

Mr. Brown failed to satisfy this burden. He points to several episodes, but only three are pertinent: a single racial slur during a three-year period, the firing of nonwhite employees over an eight-month period,

11

and antagonistic conduct by coworkers. These episodes do not constitute an abusive working environment.

The single racial slur is insufficient as a matter of law. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 665-69 (10th Cir. 2012) (holding that three isolated incidents of "sporadic . . . slurs," combined with allegations of yelling, did not establish a hostile work environment).

Mr. Brown also alleges that in an eight-month period, the store manager fired only nonwhite employees. But Mr. Brown acknowledges plausible, race-neutral explanations for the firings, even if he finds the explanations unconvincing. Mr. Brown may have subjectively felt that his job was in jeopardy because of his race, but his suspicion that the firings were racially motivated was speculative. And that speculation is not enough to prevent summary judgment. *See Alires v. Amoco Prod. Co.*, 774 F.2d 409, 411 (10th Cir. 1985).

Antagonistic conduct by coworkers was also insufficient to create a triable issue of fact. The alleged antagonism manifested itself in race-neutral disagreements between Mr. Brown and his coworkers. But ordinary workplace disagreements do not suggest a hostile work environment. *See MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

In these circumstances, we conclude that the district court properly granted summary judgment to Lowe's on the claim of a hostile work environment.

12

## IV.  Disposition

The district court's judgment is affirmed.

Entered for the Court



Robert E. Bacharach
Circuit Judge