PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

JOHN MATHEWS,

        Plaintiff - Appellant,

v.

DENVER NEWSPAPER AGENCY LLP,

        Defendant - Appellee.

No. 09-1233

## ORDER GRANTING PETITION FOR PANEL REHEARING

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

Appellee Denver Newspaper Agency's Petition for Panel Rehearing is GRANTED in part, for the purpose of adding footnote 5 on page 20. The Opinion filed March 16, 2011, is vacated. The revised opinion, filed nunc pro tunc to the original filing date, is attached.

Entered for the Court

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker, Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN MATHEWS,

      Plaintiff - Appellant,

  v.

No. 09-1233

DENVER NEWSPAPER AGENCY LLP,

      Defendant - Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:07-CV-02097-WDM-KLM)**

Barry D. Roseman, McNamara, Roseman, Martínez & Kazmierski, LLP, Denver, CO, for Plaintiff-Appellant.

Mary Hurley Stuart (Jason R. Prussman with her on the brief), Husch Blackwell Sanders LLP, Denver, CO, for Defendant-Appellee.

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

**MURPHY**, Circuit Judge.

I.     **Introduction**

     This case concerns the efforts of John Mathews, formerly a unionized employee of

Denver Newspaper Agency, LLP (the "Agency"), to litigate certain statutory employment

discrimination claims despite having previously arbitrated similar contractual claims to a final, adverse determination. Believing the Supreme Court's recent decision in *14 Penn Plaza LLC v. Pyett,* 129 S. Ct. 1456 (2009), to control the issue, the district court gave the arbitral decision preclusive force and granted summary judgment against Mathews on all counts. The district court also concluded Mathews was unable to demonstrate that he was qualified for his former position, a showing necessary to the establishment of a *prima facie* case of discriminatory demotion. Summary judgment was therefore granted on Mathews's discriminatory demotion claims on this alternate ground, as well.

The circumstances under which civil rights claims may be litigated despite a prior arbitral ruling have been long established under *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), and *14 Penn Plaza* does nothing to disturb the rule set forth therein. Because the facts in this case fit squarely within the holding of *Gardner-Denver*, no preclusive or waiver effect should have been given to the prior arbitral decision. Nevertheless, the district court properly determined that Mathews was unable to establish his *prima facie* case of discriminatory demotion as a matter of law. Exercising jurisdiction under 28 U.S.C. § 1291, we **REVERSE** in part, and **AFFIRM** in part, and **REMAND** for proceedings not inconsistent with this opinion.

## II.  Background

Mathews, originally from southern India, worked for the Agency and its predecessors almost continuously from 1983 through 2005. He was a member of the Denver Mailers Union No. 8 (the "Union") throughout this period, and the terms of his employment were controlled by a collective-bargaining agreement (the "CBA"). At the

2

time of the events giving rise to his current claims, Mathews held the position of Unit Supervisor.[1]

In June 2005, a female employee under Mathews's supervision advised her union steward of inappropriate comments allegedly made by Mathews on the 11th and 12th of that month. Beginning on June 17, 2005, the Agency placed Mathews on paid administrative leave pending its investigation of the incident. The Union filed a formal grievance against Mathews on behalf of the complaining employee on June 20, 2005, and Mathews was informed that he would be demoted from his unit supervisor position on July 1, 2005. Later that day, Mathews left the work floor and obtained a doctor's certification that he could not return to work for medical reasons.

Mathews subsequently filed an initial grievance against the Agency, alleging his demotion was motivated by national origin discrimination, in violation of Article II, Section 11 of the CBA, as well as state and federal laws. Article II, Section 11 provides:

> The Employer and the Union acknowledge continuation of their policies of no discrimination against employees and applicants on the basis of age, sex, race, religious beliefs, color, national origin or disability in accordance with and as required by applicable state and federal laws.

Mathews's initial grievance also alleged that he was demoted in retaliation for previous complaints. It appears Mathews had previously accused the Agency of deciding managerial and supervisory roles based on considerations of race, color, and national origin. Mathews conveyed these accusations to Agency's management in an email sent

---

[1] Although this position required Mathews to oversee the work of other employees, he remained part of the bargaining unit, subject to the terms of the CBA.

May 31, 2005, and in a letter dated June 15, 2005, but not delivered until some later date. The initial grievance was later amended to remove any reference to state and federal laws, leaving only a claim of discrimination in violation of Article II, Section 11 of the CBA and the cryptic phrase "Also Retaliation complaints including but not limited to."

Article XIII of the CBA contains a dispute resolution procedure, providing that "[i]n the event of a disagreement as to the interpretation, application or construction of this contract, including all disputes involving discharge or discipline, which cannot be amicably adjusted by the Employer and the employees concerned," such disagreement shall be submitted to final and binding arbitration. Despite this seemingly compulsory language, the parties agree that aggrieved employees can instead opt to litigate their disputes in a judicial forum. Mathews himself had previously litigated a claim against the Denver Post (a predecessor of the Agency). *See Mathews v. Denver Post*, 263 F.3d 1164 (10th Cir. 2001). This time, however, Mathews chose to submit his amended grievance to arbitration as provided by the CBA.

The arbitration proceeding was held over four days in February and March 2006. Although the question of discrimination was stated in terms of the CBA's anti-discrimination provisions ("[D]id GRIEVANT'S demotion violate the contractual provisions prohibiting discrimination?"), Mathews and the Agency presented their arguments by reference to controlling Supreme Court and Tenth Circuit law under Title VII and related statutes. The arbitrator agreed this approach was proper, because Article II, Section 11 of the CBA did "nothing more than recognize actions or omissions that would otherwise constitute statutory violations [are] also violations of [the CBA], so that

4

a contractual remedy is available to any aggrieved party, as well." Applying the burden-shifting technique adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the arbitrator determined (1) Mathews had established a *prima facie* case of discriminatory demotion; (2) the Agency had established a reasonably clear and specific non-discriminatory reason for its actions; and (3) Mathews was demoted not because of his national origin, but rather because a number of complaints had been submitted against him, such that the Agency "began to entertain a good faith concern whether [Mathews's] personality . . . was such as to allow him to be an effective supervisor."[2] The arbitrator consequently denied Mathews's grievance in its entirety.

Shortly following the arbitrator's adverse ruling, Mathews filed an application for disability benefits with the Social Security Administration (the "SSA"), alleging complete and total disability beginning on June 11, 2005 (the date of the alleged comments precipitating his demotion). After initially rejecting Mathews's claim, the SSA determined he was afflicted with a bulging disc of the cervical spine and an affective disorder, rendering him disabled as of June 11, 2005. Mathews was therefore awarded monthly disability benefits, as well as a lump-sum payment for the period between his disability and the SSA's recognition thereof in September 2007.

Mathews then initiated the instant litigation in Colorado state court, asserting statutory claims under Title VII and 42 U.S.C. § 1981. The Agency removed the action to the District of Colorado. Following discovery, both parties moved for summary

---

[2] The parties presented no evidence on Mathews's retaliation claim at arbitration, and the arbitral decision makes no mention of it.

judgment. The district court concluded the parties "recognized that the CBA's arbitration agreement covered [Mathews's] statutory claims." Under such circumstances, it reasoned, Mathews's submission to binding arbitration constituted a waiver of his right to seek a judicial remedy. The arbitral decision was consequently given preclusive effect, barring Mathews from litigating his statutory discrimination and retaliation claims. The district court also determined that, in light of the evidence presented, no reasonable fact-finder could find Mathews was medically qualified for the position from which he was demoted. To the extent Mathews claimed that his disability arose only after his demotion, his prior sworn assertions to the SSA of total disability arising on June 11, 2005, served to judicially estop him from taking that position. He was therefore unable to establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework. The district court thus granted summary judgment on each of Mathews's claims based on waiver and preclusion grounds, and additionally on Mathews's discriminatory demotion claim for failure to establish a *prima facie* case. Mathews now appeals the district court's order granting summary judgment for the Agency.

## III.    Discussion

This court reviews the grant of summary judgment de novo. *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007). Summary judgment is appropriate if the admissible evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the court must "view the

6

evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Lewis*, 500 F.3d at 1146. (quotation omitted).

A. <u>Waiver and Preclusion of Statutory Claims</u>

Mathews's first argument on appeal is that the decision to submit his amended grievance to arbitration did not constitute a waiver of his right to litigate statutory discrimination and retaliation claims, and that the arbitral decision rendered on his grievance should not preclude the instant litigation. The issue is controlled by *Gardner-Denver*.

In *Gardner-Denver*, the Supreme Court set forth several tenets regarding the relationship between contract-dispute arbitration and subsequent civil rights litigation. First, the *Gardner-Denver* Court stated that, while an employee may presumably "waive his cause of action under Title VII . . . mere resort to the arbitral forum to enforce *contractual* rights constitutes no such waiver." 415 U.S. at 52 (emphasis added). Second, where the arbitration agreement between the parties empowers the arbitrator "to resolve only questions of contractual rights" under a collective-bargaining agreement, such arbitrator's decision could not preclude the employee from later bringing his Title VII claims in federal court "regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Id.* at 53-54; *see also 14 Penn Plaza*, 129 S. Ct. at 1467 (discussing the holding of *Gardner-Denver*).

In *Gardner-Denver*, these basic rules combined to permit the plaintiff an opportunity to litigate Title VII claims against his employer despite having previously lost at arbitration on a grievance alleging unjust discharge in violation of the "just cause"

provision of his collective-bargaining agreement. *See* 415 U.S. at 38-42. Critically, the arbitration agreement in *Gardner-Denver* did not provide the arbitrator with authority to resolve questions of statutory rights. *Id.* at 53. Under such circumstances, the arbitral decision had resolved only the contractual violations alleged by plaintiff, and the "distinctly separate nature of [his] contractual and statutory rights [was] not vitiated merely because both were violated as a result of the same factual occurrence." *Id.* at 49. The preclusive doctrines of election of remedies, waiver, res judicata, and collateral estoppel were therefore inapplicable "in light of the collective-bargaining agreement's failure to address arbitration of Title VII claims." [3] *14 Penn Plaza*, 129 S. Ct. at 1467 (explaining the reasoning behind *Gardner-Denver*'s holding); *see also Gardner-Denver*, 415 U.S. at 50 n.10 ("The policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of res judicata and collateral estoppel.").

In addition to its core holding, the *Gardner-Denver* Court expressed doubts about the competence of arbitrators to evaluate and decide statutory claims, and about the validity of union-negotiated waivers of employees' federal forum rights for statutory claims. 415 U.S. at 51-52, 56-61. In subsequent years, the Supreme Court has

---

[3]The reasoning articulated in *Gardner-Denver* also formed the core of the Court's decisions in *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 737 (1981) (denying preclusive effect to unsuccessfully arbitrated contractual wage claims in subsequent Fair Labor Standards Act litigation), and *McDonald v. City of West Branch*, 466 U.S. 284, 289 (1984) (denying preclusive effect to unsuccessfully arbitrated contractual "just cause" claims in subsequent litigation under 42 U.S.C. § 1983).

disavowed *Gardner-Denver*'s anti-arbitration language as misguided,[4] and clarified that

an arbitration agreement can constitute an enforceable waiver of judicial forum for

statutory civil rights claims regardless whether negotiated individually or collectively.

*See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding

individually negotiated arbitration agreement encompassing statutory claims

enforceable); *Wright*, 525 U.S. at 80 (holding union-negotiated waiver of employees'

right to judicial forum for statutory claims must be "clear and unmistakable"); *14 Penn

Plaza*, 129 S. Ct. 1456 (2009) (holding union-negotiated waiver of employees' right to

judicial forum for statutory claims enforceable where waiver was "clear and

unmistakable"). *Gardner-Denver*'s core holding, however, that the decision to arbitrate

an employee's *contractual* claim by itself neither waives nor precludes the subsequent

litigation of *statutory* claims arising out of the same underlying facts, remains intact. *See

14 Penn Plaza*, 129 S. Ct. at 1467. As the law now stands, both individual employees

and unions may prospectively agree with the employer to arbitrate all employment-

related disputes, including statutory rights normally enforced through litigation, but only

so long as this intention is clearly expressed. *See id.* at 1465; *Gilmer*, 500 U.S. at 26.

The continued vitality of *Gardner-Denver* in cases where the parties had not

agreed to arbitrate statutory claims was most recently affirmed by the Supreme Court in

---

[4] "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34 n.5 (1991) (quotation omitted).

*14 Penn Plaza v. Pyett*, 129 S. Ct. 1456 (2009). There, the plaintiffs' collective-bargaining agreement contained the following language:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act . . . . All such claims shall be subject to the grievance and arbitration procedures (Article V and VI) as the sole and exclusive remedy for violations.

*Id.* at 1461. Despite this explicit language, the *14 Penn Plaza* plaintiffs filed a complaint against their employer in federal court, alleging violations of their rights under the Age Discrimination in Employment Act. Citing the terms of the collective-bargaining agreement, the defendant-employer sought dismissal of the complaint and an order compelling the plaintiffs to submit their claims to arbitration. Although the district court and Second Circuit concluded that *Gardner-Denver* controlled (rendering the collective-bargaining agreement's waiver of federal forum ineffective), the Supreme Court reversed and held the provision enforceable. *Id.* at 1463.

*Gardner-Denver*, the Supreme Court explained, denied preclusive effect to a prior arbitral decision "because the collective-bargaining agreement did not cover statutory claims." *Id.* at 1467. It therefore followed that the *Gardner-Denver* arbitrator could not decide questions of *statutory* rights regardless whether the plaintiff's "contractual rights [were] similar to, or duplicative of, the substantive rights secured by Title VII." *Id.* (quoting *Gardner-Denver*, 415 U.S. at 53-54). This jurisprudence remained sound, but does not "control the outcome where . . . the collective-bargaining agreement's

10

arbitration provision *expressly covers both statutory and contractual discrimination claims.*" *Id.* at 1469 (emphasis added). Because the collective-bargaining agreement in *14 Penn Plaza* did expressly cover statutory claims, *Gardner-Denver* had no bearing and the terms of the arbitration agreement controlled. *Id.* at 1466-69.

This body of precedent determines the outcome of Mathews's current challenge, and the district court correctly recognized that the crucial inquiry is whether the CBA's arbitration provisions covered Mathews's statutory claims. It noted that Article II, Section 11 of the CBA provided contractual guarantees against discrimination precisely coterminous with those given in federal law, and that Mathews and the Agency both treated this provision "as doing nothing more than recognizing actions or omission that would otherwise constitute statutory violations as also violations of their agreement." From this, the district court concluded the parties "recognized that the CBA's arbitration agreement covered Plaintiff's statutory claims," placing the case within *14 Penn Plaza*'s holding rather than *Gardner-Denver*'s. The court concluded Mathews's prior submission to arbitration therefore constituted a waiver of his right to seek a judicial remedy.

Nothing in the record supports the district court's logical jump. Although the parties acknowledged that violations of statutory law would *also* constitute violations of the contract, this does not mean that the CBA covered statutory claims or that the parties believed it to do so. Indeed, the district court's conclusion ignores the "distinctly separate nature" of contractual and statutory rights, which is "not vitiated merely because both were violated as a result of the same factual occurrence." *Gardner-Denver*, 415 U.S. at 50. This reasoning does not change even though the contours of the CBA's anti-

11

discrimination protections were defined by reference to federal law. *See id.* at 54. Rather, unionized employees of the Agency subjected to discriminatory treatment hold two similar claims, one based in statute, and one based in contract. The operative question remains whether the CBA's arbitration provisions are broad enough to encompass Mathews's statutory claims, such that his submission to arbitration operated as a waiver of forum or election of remedy.

Applying Supreme Court precedent to the facts of Mathews's case, it is evident no waiver of judicial forum has occurred. Again, such a waiver may only occur where the arbitration agreement expressly grants the arbitrator authority to decide statutory claims. *See 14 Penn Plaza*, 129 S. Ct. at 1469; *Gilmer*, 525 U.S. at 70-80. The arbitration clause of the CBA, from which the arbitrator derived all authority, states that "[t]he arbitrator shall have no power to add to, subtract from, change or modify any provision of this Agreement, *but shall be authorized only to resolve the dispute submitted to him or her.*" CBA, Article XIII (emphasis added). The dispute submitted to arbitration by Mathews asserted a violation of Article II, Section 11 of the CBA and a vague complaint of retaliation, but no statutory claims under Title VII or 42 U.S.C. § 1981. Because the arbitration agreement empowered the arbitrator to resolve only the dispute submitted, and because the dispute submitted made no mention of statutory claims, the arbitral decision could in no way determine the question of Mathews's statutory rights. Appropriately, the Agency's representative at arbitration agreed that the issue before the arbitrator was whether "the company discriminate[d] against Mr. Mathews *in violation of Section 11, Article II of the contract*," and the arbitral decision phrased the question decided strictly

12

in terms of Mathews's contractual rights under the CBA ("[D]id GRIEVANT'S demotion violate the *contractual provisions* prohibiting discrimination?") (emphases added).

Thus, the relevant facts of Mathews's case precisely track those of *Gardner-Denver*. There, as here, no waiver of the right to litigate statutory claims has occurred, because "mere resort to the arbitral forum to enforce contractual rights constitutes no such waiver." *Gardner-Denver*, 415 U.S. at 52. That Mathews's contractual rights and statutory rights were coterminous is of no moment: As the Supreme Court has recently reaffirmed, "[b]ecause the collective-bargaining agreement gave the arbitrator 'authority to resolve only questions of contractual rights,' his decision could not prevent the employee from bringing the Title VII claim in federal court '*regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII.*'" *14 Penn Plaza*, 129 S. Ct at 1467 (emphasis added) (quoting *Gardner-Denver*, 415 U.S. at 53-54).

Nor can it be argued that the arbitration agreement required submission of statutory claims, such that Mathews's failure to assert them in arbitration resulted in their waiver. By its own terms, the arbitration agreement applied only to disagreements "as to the interpretation, application or construction *of this contract* [i.e. the CBA], including all disputes involving discharge or discipline." CBA, Article XIII (emphasis added). Mathews's statutory claims consequently fall outside the scope of the arbitration agreement, and he has not waived such claims by failing to raise them at arbitration.

For these same reasons, no preclusive effect should be accorded to the arbitral decision. Again, nothing in the arbitration agreement permitted or required Mathews to

13

submit statutory claims to the arbitrator, nothing in the amended grievance purports to do so, and the arbitration agreement nowhere empowered the arbitrator to decide questions of statutory rights. The facts of Mathews's case thus mirror those of *Gardner-Denver* in all relevant aspects. Because the *Gardner-Denver* employees "had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in [*Gardner-Denver*] understandably was held not to preclude subsequent statutory actions." *Gilmer*, 500 U.S. at 35. Seeing no relevant distinction between that case and the one before us, the same reasoning holds.

The Agency's reliance on *Lewis v. Circuit City Stores*, in which we granted preclusive effect to a prior arbitral decision, is unavailing. There, the plaintiff had submitted "specific claims under the Kansas Act Against Discrimination . . . and Title VII of the Civil Rights Act" against his employer to binding arbitration. 500 F.3d at 1144. The arbitration agreement in *Lewis*, moreover, required arbitration of "*any* claims arising under federal, state or local statutory or common law . . . includ[ing], but not limited to . . . Title VII of the Civil Rights Act of 1964 . . . state discrimination statutes, state statutes and/or common law regulating employment termination, the law of contract or the law of tort." *Id.* at 1143 (emphasis added). Following the arbitrator's adverse determination, the *Lewis* plaintiff initiated a federal lawsuit against his employer, asserting violations of his statutory rights arising from the same set of facts as his arbitral complaints. *Id.* at 1145. In affirming the district court's grant of summary judgment against plaintiff on claim preclusion grounds, we explicitly distinguished *Gardner-Denver* and its progeny, which had allowed litigation to proceed because the parties had

14

arbitrated "contract-based claims, in contrast to statutory claims [and] the employees had never agreed to have an arbitrator decide their individual statutory rights." *Id.* at 1148 n.9. "In contrast, Lewis's arbitration agreement . . . was not limited to contractual disputes, [and] Lewis broadly agreed to arbitrate any statutory or tort claims." *Id.* Under those circumstances, the doctrines of preclusion and waiver applied.

As is evident from our foregoing discussion, Mathews's case falls squarely within the reasoning of *Gardner-Denver*, and is easily distinguished from *Lewis*. Because the submission of Mathews's contractual claims to binding arbitration results in no waiver or preclusion of his statutory claims, summary judgment on such grounds was inappropriate.

B. Failure to Establish Qualification for the Position

Mathews next challenges the district court's alternate grounds for summary judgment on his discriminatory demotion claim. In support of his Title VII claim of discriminatory demotion, Mathews presented only indirect evidence suggesting he received harsher treatment than his similarly situated, non-Indian peers. Because Mathews relies upon such indirect evidence to defend against summary judgment, the court evaluates that claim under the rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-04; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). Applying that framework to the present case, Mathews bears the initial burden of establishing a *prima facie* case of discriminatory demotion. *Kendrick*, 220 F.3d at 1226. He may satisfy his burden by presenting evidence that (i) he is a member of a protected class, (ii) he was qualified for the job as Unit Supervisor, (iii) he was demoted from that job, and (iv) the position was not eliminated. *See Jones v. Denver*

15

*Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). Once the *prima facie* case has been made, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the demotion. *Id.* at 752. Finally, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is in fact a mere pretext. *Id.* at 752-53.

The district court concluded Mathews had not satisfied his initial burden because he could not demonstrate he was qualified for the job as Unit Supervisor. Specifically, it determined the significant medical evidence in the record indicates Mathews was medically unable to perform his job (or any job) since June 11, 2005 (i.e. several weeks before the Agency demoted him). The district court also determined that, to the extent Mathews argued he was qualified to perform his job at the time of his demotion on July 1, 2005, he was judicially estopped from taking such position in light of his previous sworn statements to the SSA that he has been completely disabled as of June 11, 2005.

Mathews does not dispute that he is currently unqualified to work as a Unit Supervisor, but claims his disability arose only as a result of the Agency's allegedly wrongful decision to demote him, and that it would be inequitable for the Agency to escape liability for its wrongful act because of its dramatic consequences. He emphasizes that, regardless what the medical records in evidence may show, it is undisputed he actually worked as Unit Supervisor until being placed on administrative leave on June 17, 2005. Finally, Mathews contends the doctrine of judicial estoppel should not apply because his sworn statements to the SSA of total disability as of June 11, 2005, are not inconsistent with his current claims that he was qualified for unit supervisor position until suffering debilitating depression as a result of his demotion.

16

Viewing the record before us in the light most favorable to Mathews, we conclude he cannot establish his *prima facie* case of discriminatory demotion because he is judicially estopped from asserting he was qualified for the job of Unit Supervisor at the time he was demoted. "The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-59 (2001)). In deciding whether to apply judicial estoppel, courts look to such factors as whether "1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped." *Id.* (quotation omitted). Where a plaintiff's prior inconsistent position is a claim of total disability made in an SSA proceeding, he is not necessarily estopped from asserting qualification for his job in a subsequent lawsuit. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804-06 (1999) (discussing instances in which a plaintiff may be disabled for SSA purposes, yet sufficiently qualified to assert a claim under the Americans with Disabilities Act). In such circumstances, however, the plaintiff must provide an explanation of the apparent inconsistency with the necessary elements of plaintiff's claim. *Id.* at 806-07.

17

Guided by these principles, we review the district court's decision to apply judicial estoppel for abuse of discretion. *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007). Here, Mathews persuaded an administrative law judge for the SSA that a bulging disc of the cervical spine and an affective disorder rendered him completely disabled from working in any capacity as of June 11, 2005. He now asserts that to "the best of [his] recollection," his disabling depression only occurred after the Agency placed him on administrative leave on June 17, 2005. The two positions are clearly inconsistent and satisfy the standard test for judicial estoppel. Mathews makes no effort to explain the apparent inconsistency as required by *Cleveland*. Instead, Mathews meekly asserts there *is* no inconsistency. The conflict, however, is self-evident.

We are left with a paradigmatic case for judicial estoppel: Mathews's inconsistent statement to the SSA has resulted in his receipt of significant benefits in the form of disability payments, and allowing him to retain these benefits while he now pursues a claim predicated on a complete rejection of his prior position would give him an unfair advantage. The district court therefore did not abuse its discretion in judicially estopping Mathews from asserting that he was qualified to work as Unit Supervisor until being placed on administrative leave. Because this estoppel prevents Mathews from establishing his *prima facie* case of discriminatory demotion, summary judgment of that claim is affirmed.

C. Mathews's Retaliatory Demotion Claim

Because we affirm summary judgment on Mathews's statutory claim of discriminatory demotion based on his failure to establish a *prima facie* case, only his

18

claim of retaliatory demotion remains. The Agency moved the district court for summary judgment on this claim, arguing the chronology of events made it impossible for Mathews to establish a *prima facie* case of retaliatory demotion. The Agency further argued that, even if an otherwise sufficient showing of retaliation had been made, summary judgment was appropriate because Mathews had not presented evidence sufficient to overcome the weight of the arbitrator's finding that legitimate management concerns caused Mathews's demotion. These arguments were not reached because the district court granted full summary judgment against Mathews on waiver and preclusion grounds, but the Agency asserts them on appeal as an alternative basis to affirm the district court decision. For the reasons discussed above, the doctrines of waiver and preclusion do not apply to Mathews's retaliation claim, and we must now squarely address the Agency's alternative grounds for summary judgment.

As with claims of discriminatory demotion, when a plaintiff relies solely upon indirect evidence to avoid summary judgment on a claim of retaliation, courts employ the burden-shifting framework of *McDonnell Douglas*, under which the plaintiff bears the initial burden of establishing a *prima facie* case. *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008). To establish a *prima facie* case of retaliatory demotion, the plaintiff must make a showing that (i) he was engaged in protected activity, (ii) he suffered an adverse employment action, and (iii) there was a causal connection between the protected activity and the adverse action. *See Timmerman v. U.S. Bank*, 483

19

F.3d 1106, 1122-23 (10th Cir. 2007).[5] Mathews contends that correspondence with his supervisors, in which he complains Agency management made personnel decisions based on improper consideration of race and ethnicity, precipitated his subsequent demotion from Unit Supervisor. The facts of Mathews's correspondence and demotion are not disputed, establishing the first two elements of his *prima facie* claim. The Agency, however, asserts the third prong, a causal connection between the two, cannot logically be established because the correspondence was not received by the Agency until *after* Mathews had been placed on paid administrative leave.

The argument is not persuasive. The record shows Mathews was placed on administrative leave on June 17, 2005, and that his demotion was announced on July 1, 2005. It also shows Mathews had communicated his suspicions of discriminatory decision-making to his Agency supervisors by email on May 31, 2005, and by letter sometime after June 17, 2005, but before July 1. In arguing that no causal connection can be shown between the correspondence and Mathews's demotion, the Agency focuses solely upon the timing of the letter. This ignores the email, which was received well

_____

[5] In addition to the three-part showing required by *Timmerman*, some circuits have also required plaintiffs to demonstrate they are "qualified for the position at issue, or, if already employed, [had] met the employer's legitimate work expectations." *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 692 (7th Cir. 2003); *see also Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259-60 (5th Cir. 2001) (concluding "that qualification for the job is an element of a *prima facie* case of ADEA retaliation" in a failure to rehire case). *But see EEOC. v. Dunbar Diagnostic Servs. Inc.*, 92 F. App'x 83, 84-85 (5th Cir. 2004) (declining to require plaintiff to demonstrate qualification for position as part of her *prima facie* burden in wrongful discharge case). In its motion for summary judgment in the district court and its briefing before this court, however, the Agency has relied on *Timmerman*'s three-part test for the standard against which Mathews's *prima facie* case of retaliatory demotion should be judged. Accordingly, our analysis is limited to the *Timmerman* rubric.

before the events giving rise to Mathews's placement on administrative leave. A causal connection is therefore not impossible to show. Furthermore, even if there had only been the one letter, it too was received by the Agency prior to its decision to demote Mathews. Although he had been placed on administrative leave prior to its receipt, there is no indication the decision to *demote* him had already been made. Mathews has satisfied his burden of showing a causal connection between his complaints and his subsequent demotion, and the requisite *prima facie* showing has thus been made. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (holding that the burden of establishing *prima facie* case of discriminatory treatment may be satisfied by "minimal" showing).

Under the *McDonnell Douglas* framework, the burden next shifts to the Agency to articulate some legitimate, non-discriminatory reason for Mathews's demotion. 411 U.S. at 802. The Agency's proffered explanation—namely, its doubts as to Mathews's suitability for the Unit Supervisor position—suffices to satisfy this burden. The final burden therefore falls to Mathews, who must point to some admissible evidence showing that the Agency's proffered explanation is mere pretext. *Kendrick*, 220 F.3d at 1226.

Mathews has presented some evidence that other employees were not demoted for their objectionable conduct. Such evidence can, in some circumstances, provide a sufficient showing that an employer's proffered explanation is pretextual to avoid summary judgment. The Agency, however, urges this court to hold Mathews to a more stringent standard in light of the arbitrator's prior adverse ruling. Specifically, the Agency cites to Second Circuit case law holding that, where a plaintiff's statutory discrimination or retaliation claims have previously been rejected in an arbitral

21

proceeding following an evidentiary hearing and based upon substantial evidence, the plaintiff, "to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised." *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002). We are asked to adopt this reasoning, and to hold Mathews's evidence per se insufficient to overcome the probative weight of the arbitrator's adverse ruling.

This court has not adopted the Second Circuit's per se "strong evidence" standard, and there is no need to do so now. In *Gardner-Denver*, the Supreme Court counseled that, when evaluating a plaintiff's statutory discrimination claims arising out of the same facts as a previously arbitrated contract dispute, the arbitrator's prior decision "may be admitted as evidence and accorded such weight as the court deems appropriate." 415 U.S. at 60. The Court clarified that it could prescribe no fixed standard as to the probative weight accorded to such an arbitral decision, "since this must be determined in the [trial] court's discretion with regard to the facts and circumstances of each case." *Id.* at 60 n.21; *accord Barrentine*, 450 U.S. at 743 n.22. Certainly, "'[w]here an arbitral determination gives full consideration to an employee's [Title VII] rights, a court may properly accord it great weight,'" but the court must also consider the "'degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators.'" *Barrentine*, 450 U.S. at 743 n.22 (quoting *Gardner-Denver*, 415 U.S. at 60 n.21). The *Collins* court, in fact, acknowledged as much before articulating its "strong evidence" standard. *See* 305

22

F.3d at 119 (citing cases). In light of the Supreme Court's clear directive to accord weight to prior arbitral decisions on a case-by-case basis, a per se standard is inappropriate and we will not affirm the grant of summary judgment on that basis.

IV.     **Conclusion**

For the foregoing reasons, the district court's grant of summary judgment against Mathews on his discriminatory demotion claim is **AFFIRMED**, and the district court's grant of summary judgment on the retaliatory demotion claim is **DENIED**. The case is **REMANDED** to the district court for further proceedings not inconsistent with this decision.