# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 13, 2012

No. 11-50714

Lyle W. Cayce
Clerk

AMBER IBARRA,

Plaintiff - Appellant

v.

UNITED PARCEL SERVICE,

Defendant - Appellee

Appeal from the United States United States District Court
for the Western District of Texas

Before KING, HIGGINBOTHAM, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Amber Ibarra brought a Title VII sex discrimination claim against her former employer. The district court granted summary judgment for Ibarra's employer on the ground that the grievance procedure established in a collective bargaining agreement provided the exclusive remedy for Ibarra's Title VII claim. We vacate the district court's judgment and remand for further proceedings.

## I.

Amber Ibarra worked as a package car driver for the United Parcel Service ("UPS"). UPS terminated Ibarra for "recklessness resulting in a serious accident" after she lost control of her van and struck a telephone pole while

No. 11-50714

delivering packages. She received a traffic citation, and the UPS vehicle had to be towed.

Ibarra filed a grievance under her union's collective bargaining agreement ("CBA") challenging her termination. In her grievance, she claimed that the decision to fire her was unjust but did not allege sex discrimination. According to procedures established in Article 51 of the CBA, Ibarra first had a local hearing, under union representation. Her discharge was upheld at the local hearing. The local hearing was followed by an evidentiary hearing before the Southern Regional Area Parcel Grievance Committee ("SRAPGC"), which unanimously denied her grievance and upheld her termination.[1]

Ibarra then filed a charge of sex discrimination with the EEOC. She filed this Title VII action in the district court within ninety days of receiving a right to sue notice. UPS filed three motions for summary judgment.[2] The first alleged that Ibarra had not timely filed her complaint after receiving her right to sue notice from the EEOC. UPS later withdrew that motion. The second motion argued that UPS was entitled to summary judgment on two grounds: (1) Ibarra engaged in "serious misconduct" that was not discovered by UPS until Ibarra's deposition, and she was "foreclosed from claiming or receiving reinstatement, front pay, or backpay from the date her misconduct was discovered;" and (2) the grievance procedure established in the CBA provided Ibarra's exclusive remedy for her Title VII sex discrimination claim, and Ibarra "failed to exhaust that remedy by failing to assert discrimination by UPS in the grievance process." UPS's third motion for summary judgment argued there was a lack of evidence

---

[1] Had the SRAPGC deadlocked, Ibarra's procedure would have proceeded to the Southern Region Deadlock Committee, and if the Deadlock Committee deadlocked, to arbitration.

[2] UPS apparently filed the separate motions for summary judgment because of page limits established by LOCAL R. CIV. P. 7(d)(3).

2

No. 11-50714

supporting Ibarra's claim of sex-based disparate treatment.  The district court agreed that Ibarra failed to pursue her exclusive remedy for her Title VII claim and granted summary judgment for UPS on that ground.  It did not reach the merits of UPS's other summary judgment motions.  Ibarra timely appealed.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court.[3]  "Summary judgment is proper if the pleadings and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[4]

## III.

On appeal, Ibarra argues that the district court erred in two respects. First, she maintains that the district court erred in its finding that the collective bargaining agreement explicitly provides that statutory discrimination claims are subject to the grievance process. Second, she argues that UPS did not adequately plead the affirmative defense that the CBA provided the exclusive remedy for Ibarra's sex discrimination claim.  We agree that the district court erred in its finding that the CBA's Article 51 grievance process is the exclusive remedy for Title VII claims brought by UPS employees like Ibarra, and we do not reach Ibarra's second argument.

## A.

The grievance process established in the CBA forms the exclusive remedy for Ibarra's Title VII claim only if the CBA clearly and unmistakably waives Ibarra's right to pursue her Title VII claim in a judicial forum.  The question whether the grievance process is Ibarra's exclusive remedy turns on the relationship between the Supreme Court's 1974 decision in *Alexander v.*

---

[3] *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012).

[4] *Id.* (citing FED. R. CIV. P. 56(a)).

No. 11-50714

*Gardner-Denver* and its more recent holding in *14 Penn Plaza LLC v. Pyett.* In *Gardner-Denver*,[5] the Supreme Court held that by resorting to an arbitrator for a discrimination claim brought pursuant to a collective bargaining agreement, an employee did not thereby waive her right to bring a Title VII claim in federal court.[6] The crux of the Court's decision was its recognition that the employee had separate statutory and contractual rights.[7] The Court explained: "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress."[8] The Court suggested that "[a]rbitral procedures . . . make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII."[9]

Thirty-five years later, the Court in *Penn Plaza*[10] drained force from *Gardner-Denver*'s statements suggesting that arbitral procedures are inadequate to address statutory discrimination claims.[11] Relegating those statements to dicta,[12] the Court did not purport to overrule *Gardner-Denver*, holding only that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [Age Discrimination in Employment Act ("ADEA")]

---

[5] 415 U.S. 36 (1974).

[6] *Id.* at 52.

[7] *See id.* at 50.

[8] *Id.* at 49-50.

[9] *Id.* at 56.

[10] 556 U.S. 249 (2009).

[11] *Id.* at 265.

[12] *Id.*

4

claims is enforceable as a matter of federal law."[13] That holding built on the Court's prior decision in *Wright v. Universal Maritime Services Corp*,[14] which held that the right to a federal judicial forum for federal employment discrimination claims "is of sufficient importance to be protected against less-than-explicit union waiver in a CBA."[15]

## B.

Turning to the CBA in this case, we ask whether it "clearly and unmistakably requires union members" to submit their Title VII claims to the grievance process  established by the agreement.[16]  An answer requires a close look at two provisions, Article 51 and Article 36.  Article 51 describes grievance procedures and defines a grievance as "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement."  It provides that "any grievance, complaint, or dispute" shall be handled in the manner specified in the Article.  The procedures culminate in submission of a grievance to an arbitrator through the Federal Mediation and Conciliation Service, but only if the grievance "cannot be satisfactorily settled by a majority decision of a panel of the [Southern Regional Area Parcel Grievance Committee] and Deadlock Panel."

Article 36 is a nondiscrimination provision.  It states:

The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, sexual orientation, national origin, physical disability[,] veteran status or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law, nor will they limit,

---

[13] *Id.* at 274.

[14] 525 U.S. 70 (1998).

[15] *Id.* at 80.

[16] *Penn Plaza*, 556 U.S. at 252.

segregate or classify employees in any way to deprive any individual employees of employment opportunities because of race, color, religion, sex, national origin, physical disability, veteran status or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law. This Article also covers employees with a qualified disability under the Americans with Disabilities Act.

Article 36 mentions no specific federal or state statutes and makes no reference to the grievance procedures set forth in Article 51. The CBA contains no express waiver of a judicial forum for claims brought pursuant to Title VII.

A closer look at the controlling Supreme Court precedent confirms that the language of Article 51 and Article 36 is insufficient to waive Ibarra's right to a judicial forum for statutory discrimination claims. The *Penn Plaza* collective bargaining agreement, which clearly and unmistakably waived union members right to pursue ADEA claims in a judicial forum, included a nondiscrimination provision that expressly provided for the arbitration of claims brought pursuant to the ADEA and other federal statutes.[17] Like Article 36, the *Penn Plaza* provision stated that the employer would not discriminate against the employee on the basis of any characteristic protected by law.[18] Unlike Article 36, the *Penn Plaza* provision explicitly incorporated "claims made pursuant to . . . the Age Discrimination in Employment Act" and specified that such claims "shall be subject to the [CBA's] grievance and arbitration procedure . . . as the sole and exclusive remedy for violations," cross-referencing the relevant CBA articles.[19]

---

[17] *See id.*

[18] *See id.*

[19] *Id.* The *Penn Plaza* nondiscrimination clause read:

30. NO DISCRIMINATION
There shall be no discrimination against any present or future employee by reason of . . . any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with

No. 11-50714

Indeed, the *Penn Plaza* respondents – who argued that arbitral forums could not adequately protect statutory nondiscrimination rights – had "acknowledged on appeal that the CBA provision requiring arbitration of their federal antidiscrimination statutory claims '[was] sufficiently explicit' in precluding their federal lawsuit."[20]

Despite the fact that the nondiscrimination provision in this case does not specifically identify Title VII or state that statutory discrimination claims shall be subject to the Article 51 grievance procedure, UPS argues that the CBA read as a whole waives Ibarra's right to bring her Title VII claim in a judicial forum because the language of Article 36 obligates the company to comply with federal and state employment discrimination laws.[21] Essentially, UPS reasons that by making the nondiscrimination rights guaranteed by the CBA coterminous with those under federal and state law, Article 36 brings Title VII claims within the scope of the controversies, complaints, and disputes that must be resolved via

---

> Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.* (alteration in original) (citation and quotation marks omitted).

[20] *Id.* at 272.

[21] At oral argument, UPS for the first time suggested that the Article 51 does not establish the grievance procedure as an exclusive remedy, that the CBA merely imposes an exhaustion requirement, and that we need not decide whether Article 51 waives Ibarra's right to a judicial forum. This argument is dubious, and in fact conflicts with the position UPS has taken throughout the litigation. Regardless, we do not consider arguments not included in a party's briefs. *See, e.g.*, *United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005) ("Our cases make it clear that an argument not raised in appellant's original brief as required by FED. R. APP. P. 28 is waived.").

No. 11-50714

the grievance procedures set forth in Article 51. In the words of the Tenth Circuit, such reasoning requires a "logical jump."[22]

Under *Gardner-Denver*, an employee's statutory and contractual rights remain independent even if "the contours of the CBA's antidiscrimination protections [are] defined by reference to federal law."[23] Thus, in *Mathews v. Denver Newspaper Agency LLP*, the Tenth Circuit rejected a district court's finding that an arbitration provision covering disputes regarding the contract applied to an employee's statutory discrimination claims merely because "actions or omissions that would otherwise constitute statutory violations [were] also violations of [the] agreement."[24] Like this case, *Mathews* involved a collective bargaining agreement that prohibited discrimination on various bases "in accordance with and as required by applicable state and federal laws."[25] The Tenth Circuit found that, even read in conjunction with the agreement's nondiscrimination provision, a requirement that disputes regarding "interpretation, application, or construction of the contract" be resolved through arbitration was not sufficient to waive an employee's right to a judicial forum for his statutory discrimination claims, explaining that "unionized employees . . . subjected to discriminatory treatment hold two similar claims, one based in statute, and one based in contract."[26] The Tenth Circuit reasoned that to waive employees' rights to pursue statutory discrimination claims in a judicial forum,

---

[22] *Mathews v. Denver Newspaper Agency LLP*, No. 09-1233, 2011 U.S. App. LEXIS 11454, at *15 (10th Cir. Mar. 16, 2011) (revised opinion on grant of panel rehearing).

[23] *Id.* at *16 (citing *Gardner-Denver*, 415 U.S. 36, 54 (1974); *see also Gardner-Denver*, 415 U.S. at 50 ("The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.").

[24] *Mathews*, 2011 U.S. App. LEXIS 11454, at *16.

[25] *Id.* at *4.

[26] *Id.* at *17.

an arbitration provision must "expressly grant[] the arbitrator authority to decide statutory claims."[27] Other courts have expressed similar views.[28]

UPS's argument that the CBA includes an enforceable waiver of Ibarra's right to a judicial forum for her Title VII claim relies heavily on a single Fourth Circuit decision, *Austin v. Owens-Brockway Glass Container, Inc.*[29] In *Austin*, Article 38 of the collective bargaining agreement stated: "The Company and the Union will comply with all laws preventing discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, or veteran status."[30] It also stated: "Any disputes under this Article as with all other Articles of this Contract shall be subject to the grievance procedure."[31] The Fourth Circuit held that these CBA provisions waived the plaintiff's right to pursue her statutory discrimination claims in a judicial forum because the agreement "specifically list[ed] gender and disability discrimination as claims that are subject to arbitration" and the "voluntary agreement [was] consistent with" Title VII and the ADA.[32]

---

[27] *Id.* (citing *Penn Plaza*, 129 S. Ct. at 1469, 556 U.S. at 264; *Wright*, 525 U.S. at 70-80).

[28] *See Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 7 & n.7 (1st Cir. 2012) ("[S]everal Supreme Court cases indicate that, at least where federal statutory claims are concerned, an arbitration clause [in a collective bargaining agreement] can waive a judicial forum . . . only if such waiver is 'clear and unmistakable.' . . . A broadly-worded arbitration clause . . . will not suffice; rather something closer to specific enumeration of statutory claims to be arbitrated is required." (citations omitted)); *Powell v. Anheuser-Busch Inc.*, No. 04-71994, 2011 U.S. App. LEXIS 22322, at *2-*3 (9th Cir. Nov. 3, 2011) (unpublished) ("We will not interpret a CBA to waive an individual employee's right to litigate statutory discrimination claims unless the CBA ___*waiver*___ 'explicit[ly] incorporat[es] . . . statutory antidiscrimination requirements.'" (citation omitted)).

[29] 78 F.3d 875 (4th Cir. 1996).

[30] *Id.* at 879.

[31] *Id.* at 879-80.

[32] *Id.* at 885.

No. 11-50714

Setting aside factual distinctions between the two cases, the Fourth Circuit's holding in *Austin* is unpersuasive here. *Austin* was decided in 1996, before the Supreme Court issued its opinion in *Wright*,[33] which endorsed the "clear and unmistakable" standard later applied by the Court in *Penn Plaza*.[34] Since *Wright*, the Fourth Circuit has moved away from *Austin* and held that when the union and employer use "broad but nonspecific language" in an arbitration clause, the collective bargaining agreement will only bind employees to arbitrate statutory claims if the parties "include an 'explicit incorporation of statutory antidiscrimination requirements' elsewhere in the contract."[35] This is a strict standard and one which the CBA in this case would not satisfy – "a simple agreement not to engage in acts violative of [a particular federal] statute (which, it bears noting, would be significantly more explicit than [a] vague reference to acts prohibited by 'law' . . . ) will not suffice."[36] In the Fourth Circuit and elsewhere, courts have concluded that for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims.[37] The CBA in this case does neither.

---

[33] *Wright v. Universal Maritime Servs. Corp.*, 525 U.S. 70 (1998).

[34] *See id.* at 82 & n.2; *Penn Plaza*, 556 U.S. at 274.

[35] *Carson v. Giant Food, Inc.* 175 F.3d 325, 331-32 (4th Cir. 1999) (quoting *Wright*, 525 U.S. at 80).

[36] *Brown v. ABF Freight Systems, Inc.*, 183 F.3d 319, 322 (4th Cir. 1999).

[37] *See Carson*, 175 F.3d at 331-32; *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 9 (1st Cir. 1999); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999) ("[P]ost-*Wright* courts appear to be in agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright*'s 'clear and unmistakable' standard."). *Compare Mathews v. Denver Newspaper Agency LLP*, 2011 U.S. App. LEXIS 11454, at *15-*17 (10th Cir. Mar. 16, 2011), *with Safrit v. Cone Mills Corp.*, 248 F.3d 306, 307-08 (4th Cir. 2001) (finding that Section XX of a collective bargaining agreement provided a clear an unmistakable waiver of the

No. 11-50714

## IV.

Because the CBA does not clearly and unmistakably waive a union member's right to bring a Title VII claim in a federal judicial forum, the district court erred when it concluded that the CBA required Ibarra to submit her Title VII claim to the Article 51 grievance process. We VACATE the district court's grant of summary judgment for UPS and REMAND the case for further proceedings consistent with this opinion.

---

employee's right to pursue her Title VII claim in a judicial form because the section stated that the parties "would 'abide by all the requirements of Title VII' and that 'unresolved grievances arising under this Section are the proper subjects for arbitration'").